UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TARIK PHILIPS,** | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-00650 (TNM) |
| **DEPARTMENT OF THE NAVY,** | |
| Defendant. | |

**MEMORANDUM OPINION**

Tarik Philips, proceeding *pro se*, submitted a request under the Freedom of Information Act ("FOIA") to the Department of the Navy, asking for medical and investigative records that he believes will help overturn his murder conviction. He challenges the Navy's response, alleging that its search for responsive documents was inadequate and that its withholdings were improper.[1] Because the Navy has fully complied with its obligations under FOIA, the Court will grant its motion for summary judgment.

**I.**

In 2006, Philips was convicted by a New York jury of second-degree murder, assault, and related charges in connection with a shooting incident. *See People v. Philips*, 992 N.Y.S.2d 104 (N.Y. App. Div. 2014). Nonetheless, he maintains his innocence. Marx Decl. Exs. at 10, ECF No. 21-3.[2]

As relevant here, Philips disputes the testimony of a key witness in his trial, Jody Brown,

---

[1] Under the screening provisions of 28 U.S.C. § 1915A, all individually named defendants were dismissed as improper parties to this FOIA suit. *See* Order (Apr. 26, 2019), ECF No. 5.

[2] All page citations refer to the page numbers that the CM/ECF system generates.

who witnessed the shooting and sustained injuries. *Id.* at 29, 31. According to Philips, Brown's credibility was the "linchpin of the prosecution['s] case." *Id.* at 31. Because Brown was in the military, a medical review board interviewed him about the incident and his injuries. *Id.* at 29. Philips believes there are discrepancies between Brown's statements to the Navy's review board and Brown's testimony at trial. *Id.* at 31. Philips also claims that the Brooklyn District Attorney's Office conspired with the Navy to secure Brown an honorable discharge in exchange for his testimony against Philips. Pl.'s Opp'n at 13–14, ECF No. 26-1.[3]

In April 2018, Philips sent a FOIA request to the Navy, writing:

> I request the Medical Evaluation Board records in relation to the medical retirement of Jody Brown. I'm specifically requesting access to and copies of the above subject matter [Medical Evaluation Board Case]. These documents are related to an ongoing criminal litigation and these documents can possibly serve to exonerate an innocent man from prison. This FOIA request is not limited to medical board records pertaining to the answers and questions brought out through this proceeding. It is also inclusive to the letters of support produced before this boards [sic] review that was [sic] written by Assistant District Attorney Robert Walsh or any officer of the court.

Marx Decl. Exs. at 10. The Navy initially denied Philips's request because it provided insufficient identifying information about Brown. *Id.* at 13. When Philips supplied additional information in his appeal, the Navy remanded the case so that "the amplifying information" could "facilitate a more targeted search." *Id.* at 22–23.

After performing a search, the Navy informed Philips that "a Physical Evaluation Board file does exist for a Mr. Jody Brown," but withheld it under FOIA Exemption 6. *Id.* at 25. In appealing that decision, Philips asserted a public interest in disclosing the file, suggesting that

---

[3] Philips's opposition brief is at ECF No. 25, but that version is missing two pages. The Navy was served with the full brief, and it attached this complete version to its reply brief, at ECF No. 26-1. The Court's citations to Philips's opposition brief are references to ECF No. 26-1.

Brown's statements to the "Medical Evaluation Board" contradicted his testimony at Philips's criminal trial. *Id.* at 29–32. But the Navy rejected Philips's appeal, maintaining that the "total withholding" of Brown's medical file was proper under Exemption 6. *Id.* at 40–41. Philips then sued here.

During this litigation, the Navy located Brown's Physical Evaluation Board ("PEB") file, which includes the requested Medical Evaluation Board file. *See* Marx Decl. ¶¶ 9–11 & n.1. In reviewing this file, the Navy "identified at least one document that required consultation with the Naval Criminal Investigative Service ('NCIS')" and asked NCIS to search for responsive records. *Id*. ¶ 11. NCIS searched its records database and located "a 67-page NCIS Investigation File" related to a closed investigation. *Id*.

In September 2019, the Navy released the NCIS file to Philips with "the names of investigators, witnesses, victims, and other third parties" redacted under FOIA Exemptions 6 and 7(C). *Id*. ¶ 17. Four pages "that pertained to another defendant implicated in the incident which injured [Brown]" were withheld in full. *Id*. The Navy also released a previously withheld portion of the PEB file: a six-page document "reflecting the command investigation into the shooting incident in question," with third-party information withheld under the same exemptions. *Id*. ¶ 12. It withheld the remainder of Brown's PEB file under Exemption 6. *Id*. ¶ 13. *See generally* Marx Decl. Exs. at 114–20 (*Vaughn* Index). The Navy is "unaware of any other locations where responsive documents might be found." Marx Decl. ¶ 11.

The Navy's motion for summary judgment, ECF No. 21, is now ripe.

## II.

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial*

3

*Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008).  A district court reviews the record de novo, 5 U.S.C. § 552(a)(4)(B), and it views the facts and draws all inferences "in the light most favorable to the requester," *Weisberg v. DOJ ("Weisberg II")*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The "vast majority" of FOIA cases can be decided on motions for summary judgment. *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  To prevail, the movant agency must prove through nonconclusory affidavits that no material facts are in dispute, *see* Fed. R. Civ. P. 56(a), and that each responsive record has been produced to the requestor, is unidentifiable, or is exempt from disclosure.  *See Weisberg v. DOJ ("Weisberg I")*, 627 F.2d 365, 368 (D.C. Cir. 1980).

The agency has the burden to demonstrate that any withheld information falls into one of FOIA's exemptions.  5 U.S.C. § 552(a)(4)(B); *see NRDC v. Nuclear Reg. Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).  "The justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Murphy v. EOUSA*, 789 F.3d 204, 209 (D.C. Cir. 2015) (cleaned up).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. DOJ*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citing *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

### III.

Philips challenges the Navy's response to his FOIA request on three grounds.  First, he argues that the Navy's search was inadequate.  Pl.'s Opp'n at 6–10.  Second, he contends that the withholdings under Exemptions 6 and 7(C) were improper.  *Id.* at 10–15.  And third, he urges

that the Navy cannot invoke FOIA exemptions for Brown's Medical Evaluation Board file because its contents are in the public domain. *Id.* at 15–16. His arguments fail across the board.

## A.

The adequacy of a FOIA search "is generally determined not by [its] fruits . . . but by the appropriateness of the methods used to carry [it] out." *Iturralde v. Compt. of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Thus, the question "is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991), and reasonableness "depends . . . upon the facts of each case," *Weisberg II*, 745 F.2d at 1485. An agency's declaration that describes the search in reasonable detail and "aver[s] that all files likely to contain responsive materials (if such records exist) were searched" suffices, and it is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (cleaned up).

Here, the Navy's declaration demonstrates that its search for responsive records was adequate. In his FOIA request, Philips asked for the "Medical Evaluation Board records . . . inclusive to the letters of support produced before this boards [sic] review that was [sic] written by Assistant District Attorney Robert Walsh or any officer of the court." Marx Decl. Exs. at 10. The Navy's declaration plausibly explains that Brown's PEB file is the most likely location for responsive records because it contains, *inter alia*, the requested medical board records, as well as "other documents relating to [Brown's] medical separation from the Marine Corps," and any "personal statements [Brown] wanted the . . . Board to know about his ability to continue on active duty." Marx Decl. ¶ 9, 10 n.1. The Navy's

5

search of the PEB file also led to a search of the NCIS's records system, which yielded a 67-page report documenting the Navy's investigation into the shooting.  *Id.* ¶ 11.  The Navy provided Philips with a redacted version of this report.  *Id.*

Philips admits that the Navy's search encompassed "the records [he] requested."  Pl.'s Opp'n at 7–8.  But he claims that its search was still unreasonable because it did not seek out additional correspondence between the Navy and the Brooklyn District Attorney's Office regarding Brown's participation in the criminal proceedings.  *Id.* at 8–10.  Philips contends that "multiple documents" in the NCIS report show that there was "direct correspondence" between the Navy and the Brooklyn District Attorney's Office, and that a "Reporting Agent [had] served as the liaison."  Pl.'s Statement of Disputed Material Facts ¶ 16, ECF No. 25.  He suggests that the NCIS report provides only "third party" accounts and an "executive summary" of the correspondence between the Navy and Brooklyn District Attorney's Office.  Pl.'s Opp'n at 9.  So he contends that the Navy's search was not "reasonably calculated" to uncover the underlying "correspondence letters."  *Id.* at 6, 8–10.

Philips has raised no issue of material fact with respect to the search.  His argument is simply a demand that the Navy go well beyond the scope of his FOIA request.  The only reference to "correspondence" in his FOIA request was "letters of support *produced before this boards [sic] review* that was [sic] written by Assistant District Attorney Robert Walsh or any officer of the court."  Marx Decl. Exs. at 10 (emphasis added).  This refers only to letters produced before the PEB; it does not encompass any and all correspondence between the Navy and the Brooklyn District Attorney's Office.

Indeed, the voluntarily released NCIS report is itself beyond the scope of Philips's FOIA request, which sought Brown's "Medical Evaluation Board records."  *Id.*  Based on that

6

request, the Navy found Brown's PEB file, and then it searched the NCIS's records only because of a reference in this PEB file. Marx Decl. ¶¶ 9, 11. Philips would now have the Navy search for yet additional records not responsive to his FOIA request based on alleged cross-references in the NCIS report. Pl.'s Opp'n at 9–10. And these documents would come from NCIS, a separate agency within the Navy from the PEB, which was the subject of Philips's FOIA request.

But "FOIA clearly does not impose [the] burden upon federal agencies" to follow "an interminable trail of cross-referenced documents." *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994). To the contrary, an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents. Of course, if the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). So too here.

More, speculative claims about the existence of additional documents are insufficient to rebut the presumption of good faith accorded agency affidavits. *SafeCard Servs., Inc.*, 926 F.2d at 1200. Vague references in the NCIS report to underlying correspondence between the Navy and the Brooklyn District Attorney's Office do not establish a clear lead or show that the Navy has access to any such documents. The Brooklyn District Attorney's Office is not subject to the federal FOIA, which applies only to Executive-branch agencies, and an agency need not "obtain or regain possession of a record" from the files of some other agency or entity. *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982).

In sum, the Navy has demonstrated an adequate search for the requested records, so it is entitled to summary judgment in this regard.

**B.**

Philips next challenges the Navy's decision to withhold Brown's PEB file under Exemption 6 and to redact portions of the NCIS report under Exemption 7(C). The Court finds the withholdings properly justified.

FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Brown's PEB file plainly meets the threshold requirement— it is a "medical file" and implicates a "substantial privacy interest." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229–30 (D.C. Cir. 2008) ("A substantial privacy interest is anything greater than a *de minimis* privacy interest.").

FOIA Exemption 7(C), meanwhile, protects from disclosure "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The NCIS file—an investigative report of a criminal incident—satisfies the threshold law enforcement requirement, and the D.C. Circuit has "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003).

Philips does not dispute that the PEB file and the NCIS file fall under the statutory definitions, or that their disclosure implicates personal privacy interests. *See* Pl.'s Opp'n at 11–15. Instead, he urges that the public interest in disclosure outweighs the privacy interests at stake. *Id.* Once an agency identifies privacy interests that might justify disclosure, courts must balance these interests "against any public interest in the requested information." *Multi*

*Ag Media LLC,* 515 F.3d at 1228.

  Philips first argues that the medical board file could help "prov[e] his innocence in his pending criminal conviction." Pl.'s Opp'n at 11. But a FOIA requester's personal need for records is "irrelevant to th[e] balancing" inquiry. *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an *agency*'s performance of its statutory duties or otherwise let citizens know what their government is up to." *CREW v. DOJ*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (emphasis added) (cleaned up). Indeed, the D.C. Circuit has specifically found that a plaintiff's "personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest." *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *reinstated on remand*, 378 F.3d 1115 (D.C. Cir. 2004); *accord, e.g.*, *Engelking v. DEA*, 119 F.3d 980, 980–81 (D.C. Cir. 1997) (per curiam); *McRae v. DOJ*, 869 F. Supp. 2d 151, 166 (D.D.C. 2012) (citing *Oguaju*, 288 F.3d at 450).

  Philips also claims that disclosure of the contested records would reveal governmental misconduct. He asserts that the medical file "would . . . shed light on the way the [Navy] handled [its] investigation and the facts being taken into consideration while evaluating whether or not a [S]ailor is entitled to an honorable discharge." Pl.'s Opp'n at 11. Philips speculates that Brown was undeserving of an honorable discharge and suggests that—as a result of governmental misconduct—Brown received one in exchange for his testimony against Philips. *See id.* at 12–15; Pl.'s Sur-Reply at 5–6, ECF No. 27.

  This speculation falls short. A "government employee has at least some privacy interest in his own employment records, an interest that extends to not having it known

9

whether those records contain or do not contain information on wrongdoing, whether that information is favorable or not." *Beck v. DOJ*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (cleaned up).  More, when "governmental misconduct is alleged as the justification for disclosure, the public interest is insubstantial unless the requester puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity and shows that the information sought is necessary in order to confirm or refute that evidence." *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (cleaned up).  Philips's conjecture about (and obvious disagreement with) Brown's honorable discharge is far from the requisite evidentiary showing.

When, as here, the request implicates no public interest at all, the Court "need not linger over the balance" since "something . . . outweighs nothing every time." *Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990) (cleaned up).  The balance of interests supports the Navy's withholdings under Exemptions 6 and 7(C).

## C.

Finally, Philips posits that the withholding of Brown's medical board records is improper because Brown placed their contents in the public domain through his testimony at Philips's criminal trial.  *See* Pl.'s Opp'n at 15–16.  Although an agency may not rely on a FOIA exemption to withhold information that has been "officially acknowledged" or is in the "public domain," *Afshar v. Dep't of State*, 702 F.2d 1125, 1130, 1131 n.7 (D.C. Cir. 1983), the FOIA requester must "point to specific [publicly disclosed] information identical to that being withheld." *Davis*, 968 F.2d at 1280 (cleaned up).

In support of this "official disclosure" argument, Philips proffers highlighted testimony from the transcript of his criminal trial in a New York state court.  Pl.'s Opp'n at 15–16; Pl.'s

Opp'n Ex. 2, ECF No. 25-1.  This fails to overcome the Navy's withholdings for at least two independent reasons.  First, an official disclosure generally must come from the agency itself, and the testimony of witnesses in a state criminal trial is far afield of disclosures from the Navy.  *See Frugone v. CIA*, 169 F.3d 772, 774 ("[W]e do not deem 'official' a disclosure made by someone other than the agency from which the information is being sought.").  The Navy aptly notes that it "had no role in generating the testimony during [Philips's] state court trial in Brooklyn, New York."  Def.'s Reply at 12, ECF No. 26.  Second, the testimony that Philips highlights relates tangentially—at most—to information that might be revealed in the withheld documents.  *See* Pl.'s Opp'n Ex. 2.  He has not matched the testimony with the withheld information, much less shown it to be identical.  Thus, the Navy has not waived its ability to withhold the contested material.[4]

### IV.

For these reasons, the Court will grant the Navy's motion for summary judgment.  A separate Order will issue.


Dated:  July 15, 2020                                   TREVOR N. McFADDEN
                                                        United States District Judge

---

[4] Though Philips does not argue that the Navy failed to comply with its duty under 5 U.S.C. § 552(b) to segregate non-exempt material, *see generally* Pl.'s Opp'n, the Court has an obligation to consider this issue anyway.  *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002).  The Court finds, based on the agency's declaration and *Vaughn* Index, that the Navy has met its duty to segregate non-exempt from exempt material.  *See* Marx. Decl. ¶¶ 16, 19; Marx Decl. Exs. at 114–20.